**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GANAWAN ISMAIL,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **JPMORGAN CHASE BANK, N.A.,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Ganawan Ismail (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against JPMorgan Chase Bank, N.A. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in North Wales, PA.
3. Upon information and belief, Defendant JPMorgan Chase Bank, N.A. is a multinational financial services firm with a location at 318 N Main Street, Doylestown, PA 18901 and corporate headquarters located at 270 Park Avenue, New York, NY 10017.
4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and

employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§

1391(b)(1) and 1391(b)(2) because Plaintiff was domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
12. Plaintiff exhausted her administrative remedies under Title VII and the PHRA.
13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race, gender and disability discrimination as well as retaliation against Defendant.
14. The Charge was assigned a Charge Number 17F-2023-60908 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").
15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated June 4, 2026.
16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.
17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.
18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
20. Plaintiff is an African American female.

21. On or about December 16, 2019, Defendant hired Plaintiff in the position of Relationship Banker.
22. Plaintiff was well qualified for her position and performed well.
23. In or around July 2020, Defendant promoted Plaintiff to Private Client Banker.
24. Plaintiff was well qualified for her position and performed well.

**A MANAGER IN TRAINING SEXUALLY HARASSED TWO (2) FEMALE TELLERS**

25. In or around April 2023, Riaz Mohammed (male) began training as a Branch Manager at Plaintiff's location.
26. During his training, Mohammed sexually harassed two (2) female Tellers, Giana Thompson and Hadir Abdul-Eenin.
27. Specifically, Mohammed asked Abdul-Eenin when she gets her period.
28. In addition, Mohammed touched Thompson in a sensual manner and asked her to teach him how to dance the bachata, a sensual dance, on multiple occasions.
29. Upon information and belief, Mohammed had multiple sexual harassment complaints filed against him at previous branches that he worked out of.

**THOMPSON AND ABDUL-EENIN REPORTED MOHAMMED'S SEXUAL HARASSMENT TO PLAINTIFF AND SHE INSTRUCTED THEM TO REPORT IT TO HUMAN RESOURCES**

30. Both Thompson and Abdul-Eenin reported Mohammed's sexual harassment to Plaintiff.
31. Plaintiff directed Thompson and Abdul-Eenin to report Mohammed's sexual harassment to Human Resources.
32. Thompson and Abdul-Eenin followed Plaintiff's instructions and filed a complaint with Human Resources.

**PLAINTIFF PARTICIPATED IN THE HUMAN RESOURCES INVESTIGATION**

33. In or around May 2023, Plaintiff provided a statement to Human Resources regarding the resulting investigation into Mohammed's sexual harassment.

34. Specifically, Plaintiff informed Human Resources that Thompson and Abdul-Eenin had reported Muhammed's sexual harassment to her.

**THE MARKET DIRECTOR INFORMED PLAINTIFF THAT MOHAMMED WAS GOING TO BE THE NEW BRANCH MANAGER AND DISMISSED THE SEXUAL HARASSMENT COMPLAINTS FILED AGAINST HIM**

35. Shortly afterwards, in or around May 2023, Regina Mirkin, Market Director, came to Plaintiff's location and informed Plaintiff that Mohammed was going to be the new Branch Manager at the location.

36. Plaintiff complained that it was inappropriate to assign Mohammed as the Branch Manager at the location due to the sexual harassment complaints.

37. However, Mirkin responded by telling Plaintiff to "get rid of the shenanigans", or words to that effect, and that she did not believe Mohammed sexually harassed anyone, as she had brought him to Defendant from Wells Fargo.

38. Plaintiff felt that Mirkin wanted her to dismiss the sexually harassment complaints made against Mohammed.

**MIRKIN RETALIATED AGAINST THOMPSON FOR REPORTING MOHAMMED'S SEXUAL HARASSMENT**

39. Mirkin proceeded to retaliate against Thompson by filing a false complaint that Thompson was stealing time.

40. It was clear to Plaintiff that Mirkin was retaliating against Thompson due to her complaint of sexual harassment against Mohammed.

**MOHAMMED AND MIRKIN REPEATEDLY ASKED PLAINTIFF WHAT SHE HAD SAID TO HUMAN RESOURCES**

41. In addition, Mohammed and Mirkin repeatedly asked Plaintiff what she had said to Human Resources as part of the investigation into Mohammed's sexual harassment.

42. Plaintiff feared retaliation from Mohammed and Mirkin.

**MOHAMMED SEXUALLY HARASSED PLAINTIFF**

43. In or around the end of May 2023, Mohammed put his hands on Plaintiff's shoulders and sensually touched her, while stating "this was how [he] wanted [her] to dress", or words to that effect.

44. Plaintiff was extremely uncomfortable by Mohammed's sexually inappropriate conduct.

**PLAINTIFF REPORTED MOHAMMED'S SEXUAL HARASSMENT TO HUMAN RESOURCES**

45. On or about the next day, Plaintiff emailed Human Resources and complained about Mohammed's sexual harassment.

46. Human Resources informed Plaintiff that her complaint would be investigated.

**MOHAMMED RETALIATED AGAINST PLAINTIFF**

47. Immediately following her complaint, Mohammed retaliated against Plaintiff by nitpicking her work product, reprimanded her for her attire and changed her schedule so that she had to work on Saturdays, which she had previously not been scheduled to work.

**A CAUCASIAN MALE COWORKER HIT PLAINTIFF WITH A DOOR DURING A HEATED DISAGREEMENT**

48. On or about June 20, 2023, Plaintiff became involved in a heated disagreement with Edward Keenan (Caucasian male), Private Client Advisor, who became so aggressive towards Plaintiff that he physically hit Plaintiff with a door.

**PLAINTIFF REPORTED KEENAN'S CONDUCT, BUT IT WAS NOT PROPERLY ADDRESSED**

49. Plaintiff reported the situation to Mohammed as this was not the first disagreement she had with Keenan in which he became aggressive towards her.

50. Upon information and belief, Keenan was not disciplined or reprimanded for his conduct towards Plaintiff, as they continued to work together.

**HUMAN RESOURCES INFORMED PLAINTIFF THAT SHE WAS BEING INVESTIGATED**

51. On or about July 13, 2023, Human Resources informed Plaintiff that she was being placed under investigation, but did not provide her with the reason for it.

52. Plaintiff reasonably believed the investigation was regarding the situation with Keenan.

**THE INTERIM-MARKET DIRECTOR PLACED PLAINTIFF ON PAID ADMINISTRATIVE LEAVE PENDING INVESTIGATION**

53. On or about July 14, 2023, Antonio Pelosi, interim-Market Director, notified Plaintiff that she was being placed on paid administrative leave pending investigation.

54. Importantly, the majority of Plaintiff's compensation came through commission, which she was unable to earn while on administrative leave.

55. Pelosi did not inform Plaintiff of the reason for her placement on administrative leave.

**PLAINTIFF INQUIRED ABOUT THE STATUS OF THE INVESTIGATION, BUT DID NOT RECEIVE ANY INFORMATION**

56. Plaintiff proceeded to call Pelosi to inquire the status of the investigation, but was told by Pelosi that he did not have any information to report to her.

**PLAINTIFF FILED A COMPLAINT OF RACE AND GENDER DISCRIMINTION**

57. In or around early August 2023, Plaintiff filed a complaint of discrimination through Defendant's Ethics website.

58. Specifically, Plaintiff complained that she was being discriminated against due to her race and gender, as Keenan had not been placed on administrative leave and/or investigated for his conduct on or about June 20, 2023.

**HUMAN RESOURCES INFORMED PLAINTIFF THAT SHE WAS PLACED UNDER INVESTIGATION FOR ALLEGEDLY THREATENING MOHAMMED**

59. On or about August 17, 2023, Andrea Goldlum, Vice President of Employee Relations, informed Plaintiff that she was being investigated for allegedly physically threatening Mohammed.

60. This accusation was completely false.

61. In addition, Plaintiff was not informed of these alleged threats until approximately five (5) weeks into her suspension.

**DEFENDANT CONSTRUCTIVELY DISCHARGED PLAINTIFF**

62. After notifying Plaintiff of the allegations, Defendant did not provide any updates to Plaintiff regarding the investigation.

63. As a result, Plaintiff felt she had no other choice but to resign, as Defendant did not appear to have any intent to have her return to work.

64. On October 15, 2023, Plaintiff submitted her resignation to Human Resources via email to be effective October 29, 2023.

65. Plaintiff was constructively discharged.

66. Plaintiff was sexually harassed, discriminated against due to her race and gender, and retaliated against for participating in an investigation regarding sexual harassment, reporting sexual harassment and gender and race discrimination in violation of Title VII and the PHRA.

67. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

68. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

69. Taken together, the acts outlined above constitute a hostile work environment based on sex.

    a. Plaintiff suffered intentional discrimination because of her membership in a protected class – female.

    b. Such discrimination was severe or pervasive.

    c. Such discrimination detrimentally affected Plaintiff.

    d. Such discrimination would have detrimentally affected a reasonable woman in Plaintiff's position.

70. The unlawful employment practices outlined above were intentional.

71. Plaintiff suffered tangible employment actions as alleged herein.

72. Defendant knew or reasonably should have known of the sexual harassment.

73. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

74. Defendant's acts and/or omissions were willful or performed with reckless disregard to her federal statutory rights.

75. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT II – SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**
**PENNSYLVANIA HUMAN RELATIONS ACT**

76. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

77. The foregoing conduct created a sexually hostile work environment for Plaintiff.

78. Plaintiff suffered intentional discrimination because of her sex.

79. Defendant subjected Plaintiff to unwelcome conduct of a sexual nature that was severe or pervasive.

80. The discrimination detrimentally affected Plaintiff.

81. Plaintiff suffered tangible employment actions as alleged herein.

82. The discrimination would detrimentally affect a reasonable woman in Plaintiff's position.

83. Defendant knew or reasonably should have known of the sexual harassment.

84. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

85. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT III – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. Plaintiff is a member of protected classes in that she is African American.

88. Plaintiff was qualified to perform the job for which she was hired.

89. Plaintiff suffered adverse job actions, including, but not limited to constructive discharge.

90. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

91. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

92. Defendant discriminated against Plaintiff on the basis of her protected class.

93. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

94. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

95. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISCRIMINATION BASED ON RACE
## PENNSYLVANIA HUMAN RELATIONS ACT

96. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

97. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (African American).

98. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – GENDER DISCRIMINATION**
**TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED**

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. Plaintiff is a member of protected classes in that she is female.

101. Plaintiff was qualified to perform the job.

102. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

103. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

104. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

105. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

106. Defendant constructively discharged Plaintiff.

107. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VI – GENDER DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

108. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

109. Plaintiff is a member of protected classes in that she is female.

110. Plaintiff was qualified to perform the job.

111. Similarly situated persons outside of Plaintiff's protected classes were treated more

favorably than Plaintiff.

112. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

113. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

114. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

115. Defendant constructively discharged Plaintiff.

116. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VII – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

117. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

118. Plaintiff engaged in activity protected by Title VII.

119. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

120. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VIII – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

121. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

122. Plaintiff engaged in activity protected by the PHRA.

123. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

124. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Ganawan Ismail, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment

practices which discriminate in violation of the Title VII and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: September 2, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*